## CONTINENTAL ILLINOIS NATIONAL BANK & TRUST COMPANY OF CHICAGO

v.

## Charles N. WOOTEN, Sr., et al.

No. 88–0052–LC.   Bankruptcy No. 483–00016.

United States District Court, W.D. Louisiana, Lake Charles Division.

Aug. 18, 1988.

Philip K. Jones, Liskow & Lewis, New Orleans, La., for appellant.

Charles N. Wooten, Hamilton J. Chauvin, Charles N. Wooten, Ltd., Lafayette, La., for Charles N. Wooten, Ltd. and Charles N. Wooten, Sr.

Jacque B. Pucheu, Pucheu & Pucheu, Eunice, La., for H. Kent Aguillard.

OPINION

VERON, District Judge.

Continental Illinois National Bank & Trust Company of Chicago, as the administrator for the Federal Deposit Insurance Corporation (FDIC), appeals an award of fees in a bankruptcy matter to the trustee, Charles N. Wooten, and the attorneys of the trustee, Charles N. Wooten, Ltd. Wooten filed a cross appeal, contesting the standards used by the bankruptcy judge in reaching his determination, and also objecting to the denial of an award on his final fee applications. This matter was referred to the Magistrate for a report and recommendation.

The Magistrate issued a report and recommendation which provided that the award to the trustee and the attorney for the trustee be reduced substantially.

Counsel for the trustee and for the attorney for the trustee (hereinafter referred to as Wooten) have objected to the report and recommendation on several grounds.

■ The first objection raised by Wooten ask that the report and recommendation be stricken. They contend that the law is now clear in this circuit that bankruptcy appeals may not be *assigned* or referred to a Magistrate and may only be heard by the District Judge as expressly provided in 28 U.S.C. 158. They cite the cases of *Minerex Erdoel, Inc. v. Sina, Inc.*, 838 F.2d 781 (5th Cir.1988) and *In The Matter of Elcona Homes Corp.*, 810 F.2d 136 (7th Cir.1987).

■ The court finds the argument of Wooten persuasive and finds that the order referring this appeal to the Magistrate for report and recommendation is invalid and is hereby recalled. The court will now decide this appeal as an appeal of first impression.

*Analysis of Law and Facts*

Evangeline Refining Co., Inc. instituted a Chapter 11 bankruptcy proceeding on January 6, 1983. On March 14, 1983, Charles N. Wooten was appointed trustee and his law firm, Charles N. Wooten, Ltd., was

228

appointed as attorney for the trustee. Wooten served in these positions until this matter was converted into a proceeding under Chapter 7 on January 8, 1987.

During Wooten's administration, he filed three interim fee applications and one fourth and final fee application both as trustee and as attorney for the trustee. The interim applications were filed during the administration of Judge Rodney Bernard, Jr. Wooten's first interim application for the period of March 14, 1983 through July 31, 1983 sought fees in the amount of $52,575.43 for the trustee, $14,452.71 as expenses for the trustee, and $74,706.25 for the attorneys for the trustee (Appendix A, Trustee Exhibits 1, 2, 3). On these first applications, Judge Bernard awarded the trustee $25,000, the attorneys for the trustee $53,361.25, and reimbursement of expenses in the amount of $3,262.50 (Appendix B, Trustee No. 10).

Wooten's second applications for interim allowance for the period of August 1, 1983 through November 30, 1983 requested fees for the trustee in the amount of $50,000, reimbursement of expenses in the amount of $7,926.43, and fees for the attorneys for the trustee in the amount of $58,477.50 (Trustee 4, 5, 6). On these second applications, Judge Bernard awarded fees in the amounts of $50,000 to the trustee, $11,-661.42 in expenses, and $51,202.50 to the attorneys for the trustee (Trustee No. 11).

The third interim applications for the period of December 1, 1983 through December 31, 1984 requested fees in the amounts of $50,000 for the trustee, $58,192.50 for the attorneys for the trustee, and expenses in the amount of $22,861.42 (Trustee No. 7, 8, 9). On March 15, 1985, Judge Bernard awarded trustee's fees in the amount of $25,000, reimbursement of expenses in the amount of $7,926.43, and attorneys' fees in the amount of $53,073.75 (Trustee 11).

Wooten's application for final compensation for the period of December 31, 1984 through December 31, 1986 were filed subsequent to the appointment of the new trustee in the Chapter 7 proceeding. The final applications sought approval of the prior interim allowances and additional

compensation in the amounts of $32,857.54 for the trustee, and $27,032.50 for the attorneys for the trustee. Continental Illinois National Bank, the major creditor of the estate, and Kent Aguillard, the new trustee, objected to Wooten's fee applications.

On June 22, 1987 and November 5 and 6, 1987, a hearing was held before Judge W. Donald Boe, Jr. on Wooten's fourth and final fee applications. Judge Boe read his findings of fact into the record following the hearing. On December 7, 1987, judgment was rendered denying Wooten's fourth and final fee applications, and ordering Wooten to return $20,000 to the estate by reducing the interim awards previously paid to the trustee and the attorney by $10,000 each (Appendix D).

On appeal, Continental argues that Wooten submitted false fee applications, and that his misconduct justifies the denial of all compensation. In the alternative, Continental asserts that the awards were not justified based on the unreliability of the applications. Wooten, on the other hand, contends that the interim awards should not have been reduced, and that the fourth and final fee applications should have been granted.

■ It is well established that bankruptcy judges have wide discretion in determining attorney's fees in proceedings before them. *Matter of U.S. Golf Corp.*, 639 F.2d 1197 (5th Cir.1981). An abuse of discretion can occur only when the bankruptcy judge fails to apply the proper legal standard or fails to follow the proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous. *Golf, supra.*

■ The Fifth Circuit has determined that a district court must consider the following twelve factors in awarding attorney's fees:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly;

(4) The preclusion of other employment by the attorney due to acceptance of the case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or other circumstances;

(8) The time involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client;

(12) Awards in similar cases.

*Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1298 (5th Cir.1977). The same factors in determining a reasonable compensation allowance to an attorney for a trustee are relevant in determining the allowance of compensation to a trustee. *Matter of Urban America Development Co.,* 564 F.2d 808 (8th Cir.1977).

[redacted] In the first two assignments of error in the cross appeal, Wooten asserts that the bankruptcy judge should not have reviewed and/or disturbed the interim awards at the time of the hearing on the final application. The law is clear, however, that interim awards are interlocutory, and as such are always subject to the court's reexamination and adjustment during the course of the case. *In re Callister,* 673 F.2d 305 (10th Cir.1982); 2 *Collier on Bankruptcy,* Pg. 331.03 (15th ed. 1981).

Continental contends that the amount of compensation sought in Wooten's interim and final fee application is not supported by the evidence. Wooten's first application for interim allowance as trustee requested compensation based on the maximum amount permitted by 11 U.S.C. § 326(a) of the Bankruptcy Code. No itemization of the services actually performed or the amount of time expended by Wooten was given in the trustee's first application. The second interim application for fees by the trustee listed the daily hours attributable to Wooten, James Exner and Steve Pierce for the months of August through November, 1983, without any description of the activities which were actually performed. Wooten's third and fourth applications for interim allowance as a trustee grouped the tasks performed in one day into a single billing, and broke down the total number of hours expended daily by each employee without delineating the amount of time it took to complete each activity (Trustee No. 7, Exhibit A).

Wooten's three applications for interim compensation as attorneys for the trustee also lumped all the tasks performed in one day into a single billing (Trustee 1, Exhibit A). In the first application for compensation by the attorney for the trustee, the number of hours were not attributed to individual personnel, but instead were grouped according to the generalized listings of senior attorney, senior staff attorney, paralegals, and executive legal secretary. The second, third and fourth applications broke down the number of hours attributed to each employee on a daily basis, however, they did not delineate the time required to complete each task.

[redacted] The bankruptcy judge concluded that the estimates of time provided in the various interim and final applications had less than full probative value (Tr. 286). Wooten asserts that the bankruptcy court abused its discretion in following the "contemporaneous time records rule" of the D.C. Circuit, despite the rejection of that rule in this circuit. A review of Judge Boe's findings of fact, however, indicates that the judge did not follow this rule in reaching his determination, and further reflects that he specifically analyzed the cases in which the Fifth Circuit rejected the contemporaneous time records rule (Tr. 283, 284).

Bankruptcy rule 2016(a), in pertinent part, provides:

> "A person seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file with the court an application setting forth a *detailed statement* of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." (emphasis added).

The Fifth Circuit has specifically rejected the D.C. Circuit's rule that contemporaneous time records must be kept and produced before any fees may be allowed. *Matter of Lawler*, 807 F.2d 1207 (5th Cir.1987); *Copper Liquor, Inc. v. Adolph Coors Co.*, 684 F.2d 1087 (5th Cir.1982). However, in *Copper Liquor, supra*, the court noted that while the D.C. Circuit's rule did not apply in this circuit, "prudent counsel" should adhere to that procedure. The court in *Lawler, supra*, noted that a fee application must be sufficiently detailed to allow the bankruptcy court to make an independent evaluation of whether the hours claimed are justified. *Lawler, supra*, citing *Riddell v. National Democratic Party*, 545 F.Supp. 252 (S.D.Miss.1982).

■ It is well established under the Bankruptcy Code that those seeking compensation for professional services rendered on behalf of a debtor's estate bear the burden of proof in establishing the reasonable value of their services. *In re NRG Resources, Inc.*, 64 B.R. 643 (W.D.La. 1986). In *Riddell, supra*, the court held that the applicant's burden of proving entitlement to compensation is satisfied by the submission of an application supported by sufficiently detailed documentation. It is the opinion of the court that Wooten has failed to meet his burden of proof in establishing his entitlement to the requested compensation.

Wooten's first application for interim compensation as a trustee contains absolutely no documentation which specifically identifies the activities performed or the time expended by the trustee. Further, Wooten has submitted no basis for his entitlement to the maximum allowable amount of compensation under the Bankruptcy Code.

11 U.S.C. § 330(a) provides in pertinent part that:

"... the court may award to a trustee, ... (1) reasonable compensation for actual, necessary services rendered by such trustee, ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a [bankruptcy] case...."

It has been held that without the time-and-hours data which the trustee, as an applicant for fees, was duty bound to furnish, the court may disallow, or at least drastically reduce, a fee award. *In re Roco Corp.*, 64 B.R. 499 (D.R.I.1986); *Souza v. Southworth*, 564 F.2d 609 (1st Cir.1977).

Judge Boe, emphasizing the inadequacy of Wooten's record keeping, reduced the $100,000 award to the trustee by $10,000. The reduction of the award by Judge Boe is rejected and this court finds that the award to the trustee must be reduced substantially. Wooten has not provided any documentation in support of his first request for interim compensation as a trustee.[1]

A review of the record further reflects that there is inadequate documentation to support the requests in the remainder of Wooten's fee applications. At the hearing on June 22, 1987, Wooten testified that until he was assigned to the present case, no records were kept of the time that he expended as a trustee (Tr. 36). He further testified that contemporaneous time records were not kept by his office, and that time had to be reconstructed after reviewing the files. (Tr. 66, 67, 78).

In the application of interim compensation for attorney fees, Wooten, Ltd. alleged its customary fees are as follows:

"The firm of Charles N. Wooten, Ltd. has a customary fee to its clients for its

---

**1.** The trustee charged a 1% fee on all funds handled by him. Among those sums was a letter of credit from the bank to the McBurneys in the sum of $2,850,000. The bank deposited these funds in the registry of the court and the trustee had the funds transferred to him. Later, this sum was paid over to the McBurneys. These funds need not have been transferred. Still, the trustee applied for 1% of this sum or $28,500.

Another concern of the court is the trustee's charge for handling the accounts payable and receivable for the purchase and sale of gas to Evangeline lessees. This sum totaled over $5,000,000 which the trustee charged $50,000 in his fee application.

The record reflects that Judge Bernard reduced the applications for the trustee's fees.

services on an hourly basis averaging $135.00 per hour for senior attorney time (attorneys with over 10 years experience), $125.00 per hour for senior staff attorney time (attorneys with over five (5) years experience), and $50.00 per hour for paralegal time...." [2]

In the first interim application for attorney fees, Wooten, Ltd., billed 337.50 hours for senior attorney, 147.25 hours for senior staff attorney, 193.75 hours for paralegals, and 21 hours for executive legal secretary. This application covered the period from March 14, 1983 through July 31, 1983.

In the second interim application for attorney fees, Wooten, Ltd., claimed 226.50 hours for senior attorney, associate attorney time of 178 hours and 113 hours of paralegal time. This application covered the period from August 1, 1983 through November 30, 1983.

The third application for interim attorney fees for the period of December 1, 1983 through December 31, 1984 were as follows: senior attorney, 51.75 hours; staff attorneys 1 and 2 were 327.75 hours; paralegals 1, 2 and 3 were 204.75 hours.

A former associate of Wooten's law firm, Dan Keefe, testified that many of the hours which had been attributed to him in Wooten's fee applications had not been accounted for in Keefe's records (Tr. 136, 137, 138, 139, 143, 146, 152, 166, 167). In fact, Keefe testified that while Wooten's applications showed that Keefe worked 439.05 billable hours, he actually worked only 41.25 hours during the time periods reflected in the applications (Tr. 155, Appellant's Brief p. 24). Although some of Keefe's testimony was contradicted by witnesses who testified on behalf of Wooten, the evidence still reflects that there are a great number of discrepancies in the amounts of compensation which should have been attributed to Keefe (hearing 11/6/87, pp. 24, 133). Further, Keefe testified that his customary hourly rate had been $100 an hour and not $125 as had been represented by Wooten in the fee applications (Tr. 115).

The evidence also reflects that the hourly rates which had been billed out for other personnel were excessive. On the applications for compensation as attorneys for the trustee, Wooten billed 532.50 hours for "paralegals" and an executive secretary at the rate of $50 per hour, 214.75 of which were attributed to paralegals and an executive secretary on the first application, 113 on the second application, and 204.75 on the third application (Trustee 2, 4, 8). Wooten's first interim application for attorney's fees did not designate the personnel who were classified as paralegals or as the executive secretary. In the second application, James Exner, who was an accountant and comptroller, and Steve Pierce, who was a pilot and investigator, were classified as paralegals (Trustee No. 4, Tr. 55, 47). Wooten testified that Exner was paid approximately $30,000 to $50,000 a year, while Pierce was paid approximately $36,000 (Tr. 53, 206). Wooten's third trustee application billed 52 hours for Pierce; approximately 420.5 hours for Exner; 17.25 hours for Roylene Roy, a secretary who was paid $36–39,000 a year (Tr. 52); and 12.25 hours for Andrea Bollick, another secretary (Trustee 7). No hourly rate was

---

2. In the matter of *In Re: Bass Oil, Ltd.,* 484–00210–LO, a Chapter 11 proceeding, an application filed by Wooten, Ltd. on August 14, 1985 for fees for attorneys, claimed:

   *The customary fee.* The firm of Charles N. Wooten, Ltd. has a customary fee to clients for its services on an hourly basis averaging $185.00 per hour for senior attorney time (attorneys with over ten (10) years experience), $125.00 per hour for senior staff attorneys time (attorneys with over five (5) years experience), and $50.00 per hour for paralegal time....

   In the matter of *In Re: Latham Exploration Company, Inc.,* 583–01408–Shreveport, a Chapter 11 proceeding, Wooten, Ltd. applied for an interim application for attorney's fees, for the period from December 2, 1983 through May 31, 1984 and claimed its customary fee as follows:

   *The customary fee.* The firm of Charles N. Wooten, Ltd. has a customary fee to clients for its services on an hourly basis averaging $250.00 per hour for senior attorney time (attorneys with over ten (10) years experience), $185.00 per hour for senior staff attorney time (attorneys with over five (5) years experience), and $60.00 per hour for paralegal time....

listed on the third interim application for compensation by the trustee.

Wooten's third application for interim allowance as attorneys for the trustee billed 32.75 hours at $50 an hour for paralegal No. 1, Frederick; 92.5 hours at $50 an hour for paralegal No. 2, Henson; and 79.5 hours at $50 an hour for paralegal No. 3, Desormeaux (Trustee 8). Wooten testified that Frederick and Henson were paid approximately $1,800 a month or $25,000 a year, and that Desormeaux was paid approximately $2,400 a month or $30,000 a year (Tr. 52). In addition, Wooten testified that these three employees were classified as secretaries (Tr. 52). Further, on the trustee's second application for reimbursement of expenses, these employees were billed out as clerical workers at a rate of $15–25 per hour (Trustee No. 9).

Wooten's final application for compensation by the trustee lumped the tasks performed in one day into a single billing without listing the amount of time required by the designated employee to complete each activity. In addition, the hourly rate charged for each employee's services was not listed. The final application for compensation as attorneys for the trustee billed staff attorney time at the rate of $125 an hour, associate attorney time at the rate of $90 an hour, and paralegal time at the rate of $45 an hour. In the application, Wooten categorized Dan Keefe, Keith Rodriguez, and Hamilton Chauvin, Jr., as associate attorneys, and Karen Frederick as a paralegal. Again, the tasks performed in one day were lumped into a single billing.

■ The practices employed by Wooten in preparing his fee applications have been specifically disapproved by the district courts. The record reflects that various employees which were classified in the fee applications as "paralegals" were actually performing clerical services. In the case of *In re C & J Oil Co., Inc.*, 81 B.R. 398 (W.D.Va.1987), the court specifically held that attorneys are not entitled to be compensated for the time spent by "paralegals" in performing legal secretarial and messenger work. In addition, the evidence reflects that the secretaries who were billed out by Wooten as paralegals were paid approximately $1,800 to $2,400 a month, or $21,600 to $28,000 a year, which certainly would not be compatible with the listed rate of $50.00 an hour that would produce earnings of $104,000 a year. Further, there has been no evidence presented that the employees which were listed as paralegals had any type of paralegal training. Thus, it is the opinion of the court that the amount requested for paralegal and executive secretary compensation be disallowed in its entirety.

Evidence was also presented that during the time that Wooten served as trustee and attorney for the trustee in the Evangeline case, he was the trustee in approximately 250 to 300 Chapter 7 cases in the Western District (FDIC Exhibit 2). During the same period, he was also the standing Chapter 13 trustee (Tr. June 22, 1987, p. 59). In addition, he served as trustee and/or attorney for the trustee in other Chapter 11 cases in the Western District (FDIC Exhibit 3).

Continental compiled a listing of days in which Wooten claimed to have expended more than 14 hours on the various cases in which fee applications had been filed during the same period of time in which the Evangeline applications were submitted (Appendices E, F). The exhibit compiled by Continental listed almost 4 pages of instances in which Wooten's firm billed out more than 14 hours in one day. In some instances, Wooten personally billed out over 24 hours in one day for his time (Appendix E, pp. 1, 2). The appendix reflects that on September 27, 1983, Wooten billed out 25.85 hours; on April 11, 1984, he billed out 25 hours; and on July 11, 1984, he billed out 28.5 hours. In addition, Dan Keefe was credited with billing out 25 hours on April 11, 1984, and 26.65 hours on December 14, 1984.

The evidence in this case overwhelmingly reflects that there are great discrepancies both in the amounts charged by Wooten for the services of his employees, and for the number of billable hours which were credited to his firm for the work that was alleg-

edly performed.[3] As previously noted, the fee applications grouped all tasks performed in one day by individual personnel into a single billing. This practice has been specifically disapproved by this court in the case of *In re NRG Resources, supra,* where it was determined that "counsel should not group all tasks performed in one day into a single billing, and each type of service should be listed with the corresponding specific time allotment." *NRG,* at 64. In addition, there is overwhelming evidence that the amount of hours billed in a single day were inaccurate, as evidenced by the fact that more than 24 hours were sometimes billed for tasks performed in a single day.

It has been held that the lumped-together portions of an application for allowances must be disallowed for failure to document the services performed with the required degree of specificity. *In re Nation/Ruskin, Inc.,* 22 B.R. 207 (E.D.Pa.1982). In the present case, the activities on all of Wooten's applications were lumped together into a single day's billing. Since it is evident that some work was performed for the benefit of the estate by the trustee and the attorneys for the trustee, an entire disallowance of the requested compensation would not be warranted. However, a substantial reduction would be appropriate due to the lack of the required specificity in the fee application. *Souza, supra.*

■ Although there has been no evidence presented that Wooten administered the estate in such a way as to amount to misconduct, there is sufficient evidence which suggests that the applications for fees submitted by the trustee and by the attorneys for the trustee were not substantiated by the evidence. The evidence presented in the record indicates that Wooten failed to carry his initial burden of proof by the submission of a sufficiently detailed application, thus his fourth assignment of error, which is that the bankruptcy court failed to require the opponents to carry the burden of proof once the burden

had been shifted by the applicant, is without merit. Further, Wooten's fifth objection, which is that the bankruptcy court erred in considering the evidence contained in applications submitted by Continental in other bankruptcy cases, is also without merit, since this information was clearly relevant in determining Wooten's credibility regarding the amount of hours which he billed in his applications.

■ Wooten also objected to the bankruptcy court's failure to permit the taking of the deposition of Edward Gay, à member of the Liskow & Lewis firm, in order to corroborate the number of hours which were allegedly worked by Wooten and the members of his firm. A review of the record indicates, however, that the substance of the testimony sought by the deposition would not have changed the outcome of this case, since the evidence is already overwhelming that Wooten's applications for compensation were inaccurate and were unsubstantiated.

Wooten's last objection concerns the bankruptcy court's failure to award anything on his final fee applications. Based on the evidence in the record, especially the lumping of tasks performed in one day into a single billing, the inaccuracies in the number of billable hours cited, and the overcompensation assessed for various clerical personnel, it is evident that the trial judge had a sufficient basis for denying Wooten's fourth and final fee applications. Thus, this assignment is also without merit.

Bankruptcy Rule 8013 provides:

"On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

---

**3.** The court notes that the number of hours billed by Mr. Wooten personally in this case and other Chapter 11 cases he handled in the

months of May, June and July, 1984 were 931.-85 or over 10 hours per each calendar day.

It is the opinion of the court that based on the evidence presented in the record, the findings of fact as determined by the bankruptcy judge are clearly erroneous. A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). Although the bankruptcy judge, using the lodestar approach, purportedly reduced the fees and hourly rates charged by Wooten and his associates, he assigned the arbitrary sum of $20,000 to be refunded by Wooten to the estate.

## CONCLUSION

The court concludes that a reduction of the previously approved fees for the trustee should be reduced by 50% or to the sum of $50,000. The fees of the attorneys and paralegals likewise are to be reduced by 50% or to the sum of $78,819.25.

Therefore, the trustee is ordered to refund to the estate $50,000 and Wooten, Ltd. is ordered to refund the estate the sum of $78,819.25.[4]

Judgment is being signed in accordance with this opinion.

## JUDGMENT

For the written reasons assigned this day;

IT IS ORDERED, ADJUDGED AND DECREED that the denial of the fourth and final application of Charles N. Wooten and Charles N. Wooten, Ltd., for additional compensation as trustee and as attorneys for the trustee be and the same is hereby affirmed;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment is hereby rendered ordering Charles N. Wooten, trustee, to return to the present trustee, Kent Aguillard, the sum of FIFTY

THOUSAND DOLLARS ($50,000) from interim awards previously paid.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment is hereby rendered ordering Charles N. Wooten, Ltd. to return to the present trustee, Kent Aguillard, the sum of SEVENTY EIGHT THOUSAND EIGHT HUNDRED NINETEEN AND $^{25}/_{100}$ DOLLARS ($78,819.25), from the interim awards previously paid.

---

4. The court is not reducing the expenses of the trustee but note that the use of the trustee's plane to fly the trustee and the attorneys for the trustee in handling of the estate creates a serious conflict of interest.