**In the Matter of Phil RAUCH, Debtor.**

**Bankruptcy No. 184–02539–A–11.**
**Motion No. JMF–1.**

United States Bankruptcy Court,
E.D. California.

Jan. 18, 1990.

James M. Ford, Fresno, Cal., trustee, pro se.

Dean G. Rallis, Jr., Rosen, Wachtell & Gilbert, Los Angeles, Cal., for Creditors' Committee.

Hilton A. Ryder, Ryder & Walter, Fresno, Cal., for debtor.

Gary W. Dyer, Fresno, Cal., Office of the U.S. Trustee.

## MEMORANDUM OPINION

RICHARD T. FORD, Bankruptcy Judge.

The Chapter 11 Trustee, James M. Ford (no relation to the undersigned), filed an Application for a First and Final Allowance of Limited Trustee's Fees and Reimbursement of Costs and Expenses. The fees requested were $21,502.50, and the reimbursement of costs and expenses requested were $3,412.29. The Debtor filed an Objection to the requested fees, costs, and expenses. The Official Unsecured Creditors' Committee filed a Response to the Trustee's Application, stating the Committee believes that the Trustee has rendered valuable services to the estate for the benefit of creditors, and that the fees and costs requested are reasonable. The United States Trustee filed a "no objection" comment stating that the "U.S. Trustee defers to the parties who have been active in the case since 1984 and particularly the Unsecured Creditors' Committee for any objections or questions." The matter was set for hearing on November 14, 1989, at 9:30 a.m., at which time it was continued to November 28, 1989. James M. Ford, Chapter 11 Trustee, appeared in pro se; Hilton A. Ryder appeared as attorney for the Debtor; and Gary W. Dyer appeared as attorney for the United States Trustee. There were no other appearances. Testimony was taken, and the matter was submitted, allowing the parties to submit additional Points and Authorities or Declarations by December 11, 1989. Both the Trustee and the Debtor submitted additional Declarations and Points and Authorities, and this matter is now ready for decision.

## NATURE OF CASE

It is the position of the Chapter 11 Trustee that he is entitled to the maximum trustee's fees allowed by 11 U.S.C. § 326(a), which computes to $21,502.50 based upon the sale of one parcel of property and that he is entitled to reimbursement of costs and expenses in the amount of $3,412.29, which computes out for services of clerical work, copying, postage, phone, fax, and a bond premium.

It is the Debtor's position that the Trustee is not entitled to the maximum fees allowed under § 326(a) in general for reasons that the Chapter 11 Trustee was appointed for a limited period of time, for a limited purpose, to wit selling one parcel of real property, and that equity does not allow a large fee for a relatively small amount of work. The Debtor further objects in that the Trustee has not documented his time except for 5.7 hours. The Debtor objects to a portion of the expenses claimed by the Trustee on the ground that the clerical work done and claimed as an expense is included within the Trustee's overhead, and he should not be allowed to claim as an additional expense normal clerical work not including copying costs, postage, phone, fax charges, or bond premiums paid.

It is the position of the United States Trustee that he defers to the parties who have been active in this case since 1984, particularly the Unsecured Creditors' Committee for any objections or questions.

It is the position of the Official Unsecured Creditors' Committee that the Chapter 11 Trustee rendered valuable services to the estate which benefitted the creditors, and as such, his fees and costs requested should be allowed as reasonable.

## UNDISPUTED FACTS

1. James M. Ford was appointed Limited Trustee on August 26, 1988, on a Motion brought by Federal Land Bank.

2. As of the date of the Trustee's Application for First and Final Allowance, to wit October 30, 1989, he was still Trustee.

3. The Order appointing James M. Ford states that the purpose of the limited appointment was to "take all steps necessary to sell 471 acres belonging to the Debtor." The Order further provided that:

The Trustee be and hereby is authorized and empowered to perform all of the duties required of a Trustee under 1106(a) of the Bankruptcy Code with respect to the sale of the subject property, *including but not limited to,* the authority and power to: (1) incur expenses

against the estate to determine the fair market value of the subject property; (2) list the subject property for sale with a real estate broker or to sell or to entertain offers directly without a real estate broker, at the sole discretion of the Trustee; (3) to execute all documents, including all escrow documents, on behalf of the estate of the above-named Debtor for the listing and sale of the subject property; and (4) to incur all reasonable and necessary expenses against the estate for the purpose of the sale of the subject property.

4. There is a dispute between the Trustee and the Debtor as to actually what occurred during the period of his appointment, but it is clear that the 471 acres were sold.

5. It is also clear that after the sale, a Disclosure Statement and Plan were jointly filed by the Debtor and the Official Unsecured Creditors' Committee, and that the Plan was confirmed. There is considerable dispute as to the part the Chapter 11 Trustee played in those proceedings.

6. The case is ready to close, and both parties admit that after this decision on fees, the Chapter 11 Trustee will only have to write one check to the Debtor, obtain a Court Order dismissing him as Trustee, and cancel his fiduciary bond.

## DISCUSSION

The Limited Trustee, James M. Ford, filed his Application for First and Final Allowance of Limited Trustee's Fees and Reimbursement of Costs and Expenses on October 30, 1989. In a four-page document he stated in summary that he was appointed for the sole purpose of selling 471 acres, that he sold the property for $695,000.00 plus the assumption of two obligations, one in the amount of $5,291.00 and one in the amount of $31,647.00, and that a broker's fee was reduced to $20,000.00. The Trustee alleges that the sale was confirmed, but, unfortunately, the buyer could not carry through with the sale. The Trustee further alleges that he was instrumental in providing several bidders at a subsequent auction sale of the 471 acres, and the sale was authorized for a sales price of $695,000.00 with no realtor's commission. He alleges that after the Order authorizing the sale was entered, a dispute arose between the Debtor and Western Farm Credit, and the Trustee was involved in resolving that dispute.

Secured creditors having liens on the subject property were paid all but $150,824.00.

The Trustee therefore requests a fee of $21,502.50, the maximum allowed under 11 U.S.C. § 326(a), for handling approximately $710,000.00.

In the same Application, the Trustee requests reimbursement of costs and expenses in the amount of $2,848.69, plus another $563.60 for anticipated costs and expenses in closing the case. The total requested is $3,412.29.

The Trustee attaches a 19-page exhibit itemizing the costs and expenses. The Court has summarized that exhibit, and it includes requests for reimbursement for duplication costs in the sum of $116.40, recovery of postage in the sum of $18.52, recovery of telephone expenses in the sum of $40.82, fax charges in the sum of $151.00, notary expense in the sum of $5.00, and a bond premium paid in the sum of $1,450.00. These expenses total $1,781.74, and the Limited Trustee estimates future expenses in the sum of $89.60, for a total of $1,871.34. The difference between $1,871.34 and the $3,412.29 requested is $1,540.95. These exhibits are composed of many entries (Exhibit "C", consisting of 17 pages, and Exhibit "D", consisting of 2 pages) all entitled "clerical" except for the 5.7 hours attributable to James M. Ford. The clerical entries can be broken down into either answering the phone, passing on a call, figuring out time slip and duplication charges, filing correspondence, writing letters, reviewing files, making bank deposits, completing "207 Report" forms to the Court, and other similar type clerical expenses.

The Debtor, in his Objection, disputes that the Limited Trustee is entitled to the maximum fees awarded to a Trustee ap-

pointed in a case pursuant to § 326(a). It is the Debtor's position that he (the Debtor) had sold this property on two prior occasions, and the sales had fallen through. At the time James M. Ford was appointed, the Debtor alleges that the Debtor had received an offer, and that an escrow was opened for the sale of the 471 acres after Ford was appointed. Debtor's attorney prepared the Application for approval of the sale, noticed it to creditors, and alleges that Ford did not spend any time nor did he contribute anything in obtaining the buyer. The Debtor alleges that Ford did sign the sales contract as Trustee and did sign escrow instructions covering the sale. The sale did not close, and at the suggestion of the attorney for the Debtor, it was agreed between Federal Land Bank, the Trustee, and the Debtor that the property would be auctioned in open court. Debtor's counsel filed a Motion for authority to auction the property, and the auction was held. Three bidders appeared in Court, and the final sales price was $695,000.00 with no commissions. Two obligations were assumed by the buyer, one for $5,291.00 and the other for $31,647.00. The Debtor does admit that Ford, as well as the Debtor, had conversations with prospective buyers.

The Debtor further alleges that the Order approving the sale was prepared by the attorneys for the Debtor and that a dispute between Federal Land Bank and the Debtor, which arose after the sale, was resolved through negotiations between the Debtor's counsel and Federal Land Bank. Trustee Ford was only required to execute the escrow instructions and did no more. Debtor alleges that because Ford handled only a limited problem during this Chapter, which has been in existence since 1984, he should not recover a fee under § 326(a) and § 330 of the Bankruptcy Code.

In addition, the Debtor objects to the Trustee's receiving separately as an expense or cost administrative overhead an approximate sum of $1,540.95. Debtor argues that clerical items are included in overhead expenses, that they are figured into the Trustee's fee, and they are not compensable or reimbursable separately. The Debtor does not object to reimbursement for postage, duplicating expenses, long distance calls, fax charges, bond premiums, or notary fees.

After taking testimony from Debtor, Phil Rauch, and his attorney, Hilton Ryder, it was abundantly clear from their point of view that the Chapter 11 Limited Trustee did very little in the way of services for the estate. After listening to the testimony of James M. Ford, it was also abundantly clear that from his point of view, he caused the sale, allowed this case to proceed to finality, and felt that just because he did not itemize his trustee's time and therefore could not give the Debtor and the Court his exact time charged covering his services, he should be allowed the maximum fee provided in 11 U.S.C. § 326(a) because of his accomplishment and benefits to the estate. In regard to the costs and expenses, he stated that he should be allowed to recoup those costs and expenses because he does not include those within his "hourly rate." At the conclusion of the oral testimony, the Court allowed each party to present any further Declarations or Points and Authorities they desired. The further Declaration of James M. Ford shows that, in general, although he has no specific time records other than 5.7 hours, he performed the following services:

(1) After his appointment, he met with the Debtor and Debtor's counsel to review the case. He was advised that there was a buyer in the wings by the name of Sinks. There was a conversation or two regarding how this negotiation should proceed, and the Debtor was advised that only he, the Trustee, could open the escrow, sign the documents, etc. Contrary to this instruction, the Debtor did open the escrow, signed the purchase agreement, and failed to advise the Trustee of the sale at that time. The Trustee did contact the realtor and title company, which required three trips to Chowchilla, California (which is approximately 30 miles from Fresno) for discussions. The Trustee made two trips to the title Company in Madera, California (which is approximately 20 miles from Fresno), and the Trustee discussed with the Debtor's counsel how to notice the sale and

obtain confirmation. It was agreed that the Application and noticing would be prepared by the Debtor's counsel.

(2) After the sale was noticed to creditors, the Trustee received numerous calls from interested parties claiming to have an interest in purchasing the 471 acres. Although invited, they did not show up on the day of the hearing.

(3) Several months following the hearing confirming the sale (this is to Sinks), it became apparent to the Trustee that the buyer would be unable to perform. The Trustee knew it was going to be necessary to terminate the sale and start over; the Trustee advised Debtor's counsel that he was going to get a lawyer to help him do this, and it was suggested that inasmuch as several people had an interest in the sale, they would proceed with the hearing on the sale but conduct it in the auction mode. Again, it was agreed between Debtor's counsel and Trustee that the Debtor's counsel would accomplish the Motion and noticing.

(4) Trustee contacted six interested parties who had previously expressed an interest in the property, and he advised them about the proceedings to take place in Court. The Trustee met several times in his office with interested parties and made numerous telephone calls to financial institutions reference financing.

(5) The auction sale was conducted by the Court on January 24, 1989, with three parties participating, and the sale was confirmed for $695,000.00 without a commission. The sale was subject to a $5,200.00 assessment and a $31,600.00 lien. The Trustee takes the position that he caused the sale to be made, that he saved the estate a 6% commission amounting to $41,700.00 saving, and that the property was sold for a higher price than the SINKS sale, all to the benefit of the estate. Trustee alleges that upon learning of a problem prior to the sale, he contacted the Federal Land Bank, had certain discussions with various people, brought a problem previously unknown out in the open and provided for that problem in the order.

(6) Trustee alleges that he received numerous phone calls from Dean Rallis, the attorney for the Unsecured Creditors' Committee; as a result, he periodically advised Mr. Rallis as to what was going on in the case and about the sale; and at the request of the Unsecured Creditors' Committee, he reviewed the Debtor's proposed Plans of Reorganization.

(7) The Trustee was unable to obtain evidence of fire insurance on three houses and one shop/barn, and the Trustee arranged for the coverage for the benefit of the bankruptcy estate.

(8) The Trustee alleges that because of his knowledge and expertise, he was able to allow the ultimate buyer on the land to farm prior to the close of escrow, which was a benefit both to the estate and to the buyer. He alleges that there could have been a lost crop for approximately a six month period.

The Trustee alleges in his further Declaration filed December 12, 1989, that he was appointed to sell a piece of property, that he sold the property in a professional fashion in a relatively short period of time, and obtained a price in excess of the price previously agreed to by the Debtor. He states that if the Trustee's appointment had been a full appointment rather than a limited appointment, the Trustee would have accomplished the same results in the same time frame, with the exception of conducting the § 341 meeting. Trustee states that he is unwilling to respond to the Debtor's objection that the Trustee should keep accurate time records in the same fashion as an attorney would be required to do in the generation of his fees.

The Trustee argues that there are many intangibles that relate to the Trustee's experience that ought to be considered by the Court in arriving at an award of a fee. He points to the ultimate results in this case and alleges that because of his experience and commitment to this case, a substantial result was achieved in a very short period of time. He argues that if Congress had intended to insert "other criteria" into the consideration of the statutory fees fixed under Bankruptcy Code § 326(a), they

would have inserted that language. He asserts that Congress could have but did not include in § 326(a) any language that indicated that time itemizations ought to be a necessary part of the administration of the case. The Trustee believes that this was intentionally omitted from the legislative history as well as the final draft because it was recognized that services rendered by a Trustee are unique. The Trustee wants the Court to recognize and take into account the "unity of the system," that there are good cases and bad cases, and that the Court could consider in effect more pay in a good case to make up for no pay in a bad case, although the Trustee acknowledges that this is a "business risk" one undertakes when he becomes a Trustee.

The Court is aware that in the past, some Courts took these facts into consideration in deciding fees, although there is no written authority for that procedure. In this case, however, there is an Objection on file by the Debtor to even consider that as an element in fixing fees.

Regarding Trustee's fees, there are two issues. The first is what limitation can be imposed upon the Trustee's fees under 11 U.S.C. § 326(a), and the second is what is the standard for determination of reasonable fees to be allowed a Trustee under to 11 U.S.C. § 330.

11 U.S.C. § 326(a) provides the method by which Trustees are compensated in Chapter 7 and 11 cases. Trustee fees *are not* to exceed:

A. 15% of the 1st $1,000;

B. 6% on amounts in excess of $1,000.0 but not in excess of $3,000; and

C. 3% on any amount in excess of $3,000.00. (calculated on all moneys disbursed/turned over by the Trustee.)

11 U.S.C. § 326(a) sets a ceiling or cap on, but not the standards for, fee awards to trustees. It is a statutory maximum limit on compensation Trustees can receive. See *In re Prairie Central Railway Co.,* 87 B.R. 952, 957 (N.D.Ill.1988); *In re Greenley Energy Holdings of Pennsylvania, Inc.,* 102 B.R. 400, 403 (E.D.Pa.1989); *Ca-*

*vazos v. Simmons,* 90 B.R. 234 (N.D.Tex. 1988); *In re McCombs,* 33 B.R. 387 (E.D. Mo.1983); *Southwestern Media, Inc. v. Rau,* 708 F.2d 419, 424 (9th Cir.1983)—note that *In re Powerine Oil, Co.,* 71 B.R. 767, 770 (9th Cir. BAP 1986) abandoned the "strict rule of economy" applicable to attorneys as applied in *Southwestern Media* but seemingly left intact the discussion regarding Trustee's fees; *In re Roco Corp.,* 64 B.R. 499, 502–503; see also Collier on Bankruptcy 15th ed. Vol. 2 ¶ 326.011, p. 326–2 fn. 1.

Footnote 1 sets out:

The House Report, which accompanied H.R. 8200, states that section 326(a) "simply fixes the maximum compensation of a trustee ... Under section 48c of [the Bankruptcy Act], the maximum limits have tended to become minimums in many cases. This section is not intended to be so interpreted. The limits in this section, together with the limitations found in section 330, are to be applied as outer limits, and not as grants or entitlements to the maximum fees specified." H.R.Rep. No. 595, 95th Cong., 1st Sess. 327 (1977); see S.Rep. No. 989, 95th Cong., 2d Sess. 37–38 (1978). Those limits were increased by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353.

As aptly put in *In re Roco Corp., supra,* at pp. 502–503, the unequivocal legislative history is plain regarding § 326. It caps fees that can be awarded to Trustees and creates *no entitlement* to a commission equivalent to the cap. As the *Roco* court set out, "The statutory scheme distinguishes between eligibility and entitlement."

The language in Colliers is also instructive in that it states: "The section does not authorize compensation of trustees. Rather it fixes the maximum compensation of a trustee." Colliers, *supra,* at p. 326.2.

Section 326 states that the Court *may allow* compensation under the guidelines delineated in § 330. When § 326 is read concurrently with § 330, one determines that the Court must evaluate the Trustee's services based on the nature, extent and

value of those services, the time spent rendering those services, and the cost of similar services. *In re Rosen*, 95 B.R. 11, 12 (N.D.N.Y.1988); *In re Savage*, 67 B.R. 700 (D.R.I.1986).

Accordingly, it stands that § 326 sets the outermost limit on compensation Trustees can receive under the Code. Determination of the amount of fees to be paid is done under the considerations set out in § 330.

Section 330 in part provides:

(a) After notice to any parties in interest and to the United States Trustee ..., and subject to ... 326 ..., the court may award to a trustee ...

(1) reasonable compensation for actual, necessary services rendered by such trustee ... based on the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this Title ...

Prior to enacting the present Code, the 9th Circuit followed the "strict rule of economy" test whereby the Court was empowered to arbitrarily reduce compensation payable. See *In re THC Financial Corp.*, 659 F.2d 951, 954–956 (9th Cir.1981); *In re Beverly Crest Convalescent Hospital, Inc.*, 548 F.2d 817, 820–821 (9th Cir.1976). From this rule, two principles emerged: (1) fee awards must be compensatory; and (2) ceiling on any permissible award lies *below* that charged for equivalent services in the private market.

The 9th Circuit BAP departed from this view regarding compensation in 1986. (*In re Powerine Oil Co.*, 71 B.R. 767, 770 (9th Cir. BAP 1986)) The *Powerine* case involved attorney compensation and noted that the 9th Circuit applies the "lodestar" approach to awarding attorney fees (See also *In re Yermakov*, 718 F.2d 1465, 1471 (9th Cir.1983) that considered (1) normal rate charged in non-bankruptcy, (2) prevailing rate for such work in the area of the time the work was done, and (3) number of hours worked, if any, by persons who billed their hours at a lesser rate.) While these factors are applicable to attorneys, they are not necessarily applicable to trustees. A significant difference exists between the functions performed by attorneys and those functions performed by trustees. (See for example *In re Greenley Energy Holdings of Pennsylvania, Inc.*, 102 B.R. 400 (E.D.Pa.1989)). That does not mean that the factors cannot or should not be considered.

Although the Ninth Circuit has not expounded a specific constrictive set of standards to be employed in determining reasonable fees under § 330, cases from other circuits exist to augment those standards enunciated in the Ninth Circuit as well as to set forth other viable factors which can be used to substantiate a decision in the instant case.

One Ninth Circuit case, *Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 425–426 (9th Cir.1983), discussed the reasonableness of Rau's (the trustee) fees. The Court held Rau's fees to be reasonable and proper, partly because of the *favorable results obtained* in selling the radio station licenses *and* also because the *receiver's fee was below the authorized maximum.*

■ The *Rau* court also determined *"time spent on behalf of the estate"* to be very important in determining reasonable and fair compensation. Note that the *Powerine* decision seemed to discount the *Rau* case, but this Court reads *Powerine* as only discarding the "strict rule of economy" line of thought set forth in *Rau*. Accordingly, from *Rau*, two major factors and one other consideration can be distilled: (1) results obtained, (2) time spent on behalf of estate, and (3) any savings on receiver or other administrator's fees.

*In re Greenley Energy Holdings of Pennsylvania, Inc.*, 102 B.R. 400 (E.D.Pa. 1989) is particularly instructive. The *Greenley* court in no uncertain terms differentiated trustees from attorneys. One factor of importance in the *Greenley* case is that trustees need not keep detailed time records. Id. at 405. Trustees perform significantly different tasks than an attorney would perform and such a requirement, while desirable in the abstract, would be highly impractical in running an ongoing faltering business.

In support of not requiring the keeping of detailed time records by Trustees, the Court cites *Meade Land*, 527 F.2d 280, 283–284 (3rd Cir.1975):

> When the Bankruptcy Judge finds that good cause exists for the nonproduction of the records, he may rely on some alternative form of proof along with his own articulated knowledge of the matter.

*Greenley, supra,* at p. 405.

Similarly, testimony regarding estimated time spent is probative on the issue of commissions:

> "There was no duty on the trustee to keep an accurate record of hours he spent in performing duties as a fiduciary, and his estimate of time spent has probative value in determining the commissions to be awarded to him."

See *In re Doctors, Inc.*, 4 B.R. 346, 348 (E.D.Pa.1980).

*Greenley* continues to note that the Code itself demands favorable results, as trustees are only paid pursuant to a turnover of money. Quoting the *Doctors* court, *Greenley* sets out:

> Success is the test applied by the business world in measuring compensation. It is largely so in the courts. As a rule, professional services which yield no results command no high reward.

Obviously, the *Greenley* court considered success a primary consideration in determining a trustee's fee. It also set out four other factors for consideration: (1) time spent, (2) intricacies of the problems involved, (3) the amount involved, and (4) the opposition encountered. See *Doctors, supra,* at p. 347.

Note that the *Doctors* court recognized the *economical spirit* (which was subsequently rendered ineffective by virtue of enacting § 330) of the Code citing immediately after these factors *In re Owl Drug Co.*, 16 F.Supp. 139 (D.C.Nev.1936), aff'd. sub nom *Con v. Elder*, 90 F.2d 823 (9th Cir.1937).

In addition to the factors above, the Court can, in the absence of time records, *reasonably* award a trustee a commission based on its review of the nature of the case and its familiarity with the Trustee's performance of his fiduciary duties. The Court is thoroughly familiar with this Trustee, Ford, and is thoroughly familiar with his excellent work and performance as a trustee. In addition, the undersigned has had more than 15 years active experience as a trustee himself. (*In re Rosen*, 95 B.R. 11, 12 (N.D.N.Y.1988)). The *Rosen* court suggested that in the absence of complete time records, it could not obviously award the maximum compensation allowable under § 326.

In *In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 600 (D.Colo.1989), the court noted that the trustee bears the burden of proof in all fee matters. To this extent, the trustee, and any other entity seeking compensation, must submit an application sufficiently detailing the services for which compensation is sought, containing sufficient detailed information to allow the court to find the services reasonable, actual and necessary as required under § 330 and Rule 2016. (See also *In re A–1 Hydro Mechanics Corp.*, 106 B.R. 198 (D.Hawaii 1989)). Rule 2016 requires fee applications to set forth in detail: (1) the services rendered, (2) time expended, (3) expenses incurred, and (4) amount requested.

The *Orthopaedic Technology* court denied the trustee's request for fees because of lack of detail and specificity. Evidently, the court relied on the absence of detailed contemporaneous time records to allow it to determine, with sufficient detail, the value of services compensable. As noted in this circuit, detailed time records are not required of a trustee. (See also *Greenley Energy Holdings of Pennsylvania, supra.*) There certainly is a split of authority on this point.

In *Continental Illinois National Bank & Trust v. Wooten*, 90 B.R. 226, 228–229 (W.D.La.1988), the court approved and applied the 12 factors set forth by the Fifth Circuit in determining the appropriate fee for trustees (citing *Matter of First Colonial Corp. of America*, 544 F.2d 1291, 1298 (5th Cir.1977)). As discussed earlier, these factors seem to be "subsumed" in the lodestar determination of fees. However, the

Court disallowed 50% of the Bankruptcy Court award stating that Wooten failed to meet his burden of proof by failing to specify in detail and show adequate time and hours data for the court to rule his fee application reasonable, actual and necessary in conformity with § 330 and Rule 2016.

In *In re Churchfield Management and Investment Corp.*, 98 B.R. 838, 874 (N.D. Ill.1989), the court noted:

> The delicate task of distinguishing trustee's services from attorney's services requires that the fee application contain "sufficient detail to enable the court to determine the precise services performed, the time expended, the problem involved, its difficulty, the purpose of the action taken and the resolution reached as well as the benefit to the estate." *In re Whitney*, 27 B.R. 352, 354 (D.Me. 1983), citing to *In re McAuley Textile Corp.*, 11 B.R. 646, 648 (Bankr.D.Me. 1981).

The *Churchfield* court continued to state that trustees would be well advised to keep time records so as to aid the court (and themselves) in fee determination.

The Trustee in the case at bar, in his Declaration at page 10, attempts to interpret the language, or the lack of language, in Bankruptcy Code § 326(a) by stating that "If Congress had intended to insert 'other criteria' into the consideration of statutory fees under Bankruptcy Code Section, they would have," and further the Trustee alleges that if they wanted time itemizations, they could have made that a necessary part of § 326.

In the case of *In re Arizona Appetito's Stores, Inc.*, decided on January 3, 1990, 893 F.2d 216, decided by the Ninth Circuit Court of Appeals, they stated:

> We interpret a federal statute by ascertaining the intent of Congress and by giving effect to its legislative will. *In re Southwest Aircraft Serv.*, 831 F.2d 848, 849 (9th Cir.1987), *rev'ing* 66 Bankr. 121 (Bankr. 9th Cir.1986), 53 Bankr. 805 (Bankr.C.D.Calif.1985), *cert. denied sub nom. City of Long Beach v. Southwest Aircraft Serv.*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988). We look first to the language of the statute itself to determine legislative intent. *Id.* However, if the statutory language gives rise to several different interpretations, we must adopt the interpretation which "can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested." *United States v. 594,464 Pounds of Salmon*, 871 F.2d 824, 827 (9th Cir.1989) (quoting *NLRB v. Lion Oil Co.*, 352 U.S. 282, 297, 77 S.Ct. 330, 338, 1 L.Ed.2d 331 (1957)).

Using that as a guide, there is no question as to the interpretation of § 326(a) in that it provides a cap on the discretionary authority to approve trustee's fees based upon funds brought in and expended from the estate. Likewise, there is no dissention or confusion that § 330 is the guide the Court must use in reconciling and approving professional's fees, including trustee's fees. The Legislature obviously decided that the time element for trustee's fees is not the only element to be considered or there would be no reason for § 326(a) establishing a maximum fee based upon percentages of monies brought into and disbursed from the estate.

The only information that the Trustee has given the Court on actual time spent is included in his 17–page Exhibit "C" to his Application. It is not clear to the Court why the Trustee detailed this portion of actual time spent, to wit: the period from December 1988 through August 1989, and chose not to detail any further time spent on this case. The Court is requested to arrive at and approve a fee for the reasonable services of the Trustee which benefitted the estate. The Court has before it very few time records, together with a general statement of the services performed by the Trustee. The Court is mindful that the Applicant requesting the fees has the burden of proof as to reasonableness, whether or not such fees are necessary, a benefit to the estate, etc.

The Debtor objects to the "overhead expenses" requested by the Chapter 11 Trustee. The Debtor concedes that direct, out-of-pocket expenses, including postage, copy costs, long distance calls, fax charges, bond premiums, and notary fees should be allowed. According to the calculations of the undersigned, these amount to $1,540.95. The Debtor, however, objects to the recovery of any other fees which are clerical in nature, and they cite *Southwestern Media, Inc. v. Rau, supra*, 708 F.2d at p. 426; *In re Garland Corporation*, 8 B.R. 826, 829 (D.Mass.1981).

In the case of *A–1 Hydro Mechanics Corp.*, 106 B.R. 198, decided in September 1989 in the United States Bankruptcy Court for the District of Hawaii, the Court held that the Trustee bears the burden of proof in all fee matters, including reimbursement of costs and expenses. The application must contain adequate information to show that the request for reimbursement is reasonable and that expenses and costs incurred were for the benefit of the estate. Bankr.Code, 11 U.S.C.A. § 330(a). The Court went on to state that, although the Trustee is entitled to engage paraprofessionals to assist him and have paraprofessionals paid out of the estate, secretarial, stenographic, clerical and routine messenger services are overhead expenses which are not compensable or reimbursable. Bankr.Code, 11 U.S.C.A. § 330(a)(1), (2). In that case, the Trustee was not entitled to reimbursement for expenses which he failed to show were not for overhead. The Court in *In re Orthopaedic Technology, Inc.*, 97 B.R. 596, decided in the United States Bankruptcy Court for the District of Colorado in March 1989, held that secretarial or clerical services are not compensable although services of a paraprofessional employed by the Trustee may be compensable. That Court defines clerical duties as reviewing mail, making deposits and disbursements, reconciling bank statements, etc. The Court went on to hold that clerical services are overhead to be assumed and borne by the Trustee.

It is clear that clerical duties are included within the Trustee's overhead, which is considered by the Court in awarding trustee's fees under § 330(a), with a maximum of fees to be awarded to the Trustee as set forth in § 326(a), and cannot be awarded separately as a reimbursement of costs and expenses.

### FINDINGS OF FACT

1. James M. Ford was appointed Limited Trustee in the above-entitled case on August 26, 1988.

2. The limited purpose for which the creditor filed the Motion requesting the appointment of Mr. Ford was to take all necessary steps to sell 471 acres belonging to the Debtor.

3. This case had been pending since 1984. The appointment of the Limited Trustee certainly helped to bring this case to its conclusion, due to the procrastination and dilatory efforts of the Debtor.

4. After his appointment, the Trustee met or talked with the Debtor on numerous occasions, together with the Debtor's attorney.

5. The Trustee kept diligent records regarding the time spent on this case by his secretarial and office staff. The Trustee kept very limited records reference the actual time which he spent servicing this case.

6. The legal work performed on behalf of Mr. Ford in order to conclude the sale of the 471 acres was performed, with his approval, by the Debtor's attorney, as well as it should have been, as opposed to the Trustee hiring his own attorney, which would have taken additional hours and costs to gear up to handle the Trustee's requests.

7. The Trustee met with and talked with several buyers interested in purchasing the 471 acres; the Trustee met and talked with the title insurance company located in Madera, California; the Trustee talked with and made trips to Chowchilla to discuss a sale with a realtor; and the Trustee met with and talked to financial institutions to secure information to put together a sale.

8. The Trustee received telephone calls from the attorney for the creditors' committee requesting information, and certain information was supplied.

9. The Trustee did not alone cause or put together the final sale, but from the evidence gathered from James Ford, Phil Rauch, and Hilton Ryder, he performed and assisted at least, if not more, an equal portion of the work necessary to confirm the sale and close the escrow.

10. The Trustee appeared in Court at the auction sale and certainly assisted in overcoming a stumbling block which arose just prior to the sale.

11. The Trustee provided for the ultimate buyer to take possession of the property before the close of escrow and provided for cautionary measures in the event a problem arose regarding the close of escrow.

12. The Trustee is an expert trustee, well qualified to perform the function that he was appointed for, and he is now the most competent Chapter 7 and Chapter 11 trustee performing in this Court's area.

13. The Trustee, although having an expert qualified and automated office staff, has requested reimbursement of expenses that are considered clerical in nature, together with expenses that are reimbursable, including telephone costs, fax costs, copy costs, bond premium, and notary fees.

### CONCLUSIONS OF LAW

1. 11 U.S.C. § 326(a) sets limitations on, but not the standards for, fee awards to trustees. It is not a section authorizing a fee to a trustee.

2. 11 U.S.C. § 330(a) sets the standards for attorneys and all professionals as well as *trustees.* It provides that the Court may award to a trustee ... reasonable compensation for actual, necessary services rendered by the trustee ... based on the nature, the extent, and the value of said services, the time spent on said services, and the cost of comparable services....

3. 11 U.S.C. § 330(a)(2) allows for reimbursement of actual, necessary expenses, but it does not provide for expenses for clerical work. The type of expenses allowed to be reimbursed are telephone charges, fax charges, bond premium charges, and the like.

■ After considering the facts and the law; after considering the time recorded by the Trustee (5.7 hours) attributable to the Trustee's work and the noted hourly rate of the Trustee Ford ($65.00 per hour); after considering who has the burden of proof reference the reasonableness of the fees; after considering the intangibles, including the Trustee's experience and that of his support staff; after considering the results of the case that were obtained since his appointment as Limited Trustee; and using the Court's own experience as guides, the Court concludes that a Trustee's fee of $7,500.00 is a reasonable fee.

■ After considering the facts and law, the court has concluded that, of the $3,412.29 requested to be reimbursed to the Trustee as expenses and costs, only the sum of $1,781.74 shall be ordered reimbursed. This sum accounts for phone costs, copy costs, fax costs, notary costs, and bond premium costs. The Court cannot allow clerical costs such as letter writing, phone answering, leaving messages, balancing the bank statement, writing checks, and the like, to be reimbursed.