**In re Paul and Patricia MIGUEL, Debtors.**

**Bankruptcy No. 989–02177–7.**

United States Bankruptcy Court, E.D. California.

Jan. 25, 1991.

Donna S. Tamanaha, Sacramento, for Anthony G. Sousa, U.S. Trustee for the Northern & Eastern Districts of California & Nevada.

Malcolm D. Gross, of Altman, Collins & Gross, Modesto, Cal., for Michael D. McGranahan, Chapter 7 Trustee.

MEMORANDUM OF DECISION ON U.S. TRUSTEE'S OBJECTION TO CHAPTER 7 TRUSTEE'S APPLICATION FOR REIMBURSEMENT OF EXPENSES

JOSEPH W. HEDRICK, Jr.,
Bankruptcy Judge.

This matter comes before the Court on the Chapter 7 Trustee's application for re-

imbursement of expenses (Final Account) and the U.S. Trustee's objections thereto.

The Chapter 7 Trustee seeks reimbursement of expenses in the amount of $432.00. The specific items involved are:

| | |
|---|---|
| Postage & Meter Rental | $ 22.75 |
| Pacific Telephone | 12.80 |
| Mileage | 9.60 |
| Stationery & Supplies | 33.25 |
| Office & Equipment Rental | 105.00 |
| Clerical & Steno Services | 230.00 |
| Copies | 18.60 |
| TOTAL | $432.00 |

The U.S. Trustee's objection to the application of the Chapter 7 Trustee for reimbursement of expenses is based upon the following two grounds:

1. Most of the expenses sought to be reimbursed constitute *overhead* expenses, which it is contended are not compensable items under 11 U.S.C. § 330(a)(2); and

2. The application is inadequately documented.

As will be seen, neither objection is well taken.

## DISCUSSION

*Facts*

This Chapter 7 business case, filed on August 14, 1989, is typical of the great bulk of Chapter 7 asset cases. Debtor husband, described as a self-employed welder, terminated a dairy service business of approximately one-and-a-half years' duration a few months before filing. Debtors' joint income for 1987 was $35,000; for 1988, a $20,000 loss was sustained. Discharge was obtained in January of 1990. The Trustee's Final Account was served on the U.S. Trustee in August and came on for court hearing in November of 1990.

Scheduled debts totaled $167,000, against $118,000 in assets. Unsecured indebtedness totaled $77,000 (29 creditors), with no priority creditors. Debtors claimed exempt property of $48,000. They scheduled $90,-000 in secured debt, secured by their residence and two vehicles. However, $19,000 scheduled as unencumbered accounts receivable later proved to be subject to a security interest.

In the course of the case, the Trustee sold a vehicle for $1,150 (net of auctioneer fee), successfully objected to debtors' designation of $24,000 in vehicles and accounts receivable as exempt, successfully objected to four claims totalling $8,000, and recovered $1,700 in accounts receivable which were turned over to the secured creditor. Unsecured claims were allowed in the total amount of $54,714 but no dividend was paid because insufficient funds remain in the estate even to compensate the trustee and counsel fully.

Debtor's counsel requested $750 for filing this case. Trustee's counsel requested $540. The Trustee's maximum commission is $159. Such maximum assumes sufficient assets remain to pay all fees and expenses in full, which in this case will not occur.

Statutory Analysis

Compensation of Chapter 7 trustees for services, and reimbursement of the trustees' expenses, are governed by 11 U.S.C. § 330. Compensation is subject, however, to the limitation contained in 11 U.S.C. § 326. The relevant Code sections, in pertinent part, are set out below:

*11 U.S.C. § 330. Compensation of Officers.*

(a) After notice to any parties in interest and to the United States trustee and a hearing, ... the court may award to a trustee, ...

(1) *reasonable compensation* for actual, necessary services rendered by such trustee, ... and by any paraprofessional persons employed by such trustee, ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title; and

(2) *reimbursement for actual, necessary expenses.*

11 U.S.C. § 330(a)(1) and (2) (emphasis added).

*11 U.S.C. § 326. Limitation on Compensation of Trustee.*

(a) In a case under chapter 7 or 11, the court may allow reasonable compensa-

**636**

tion under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326.

The U.S. Trustee has not cited us to, nor are we aware of, any legislative history which amplifies the language of the statute as regards reimbursement of trustee expenses. For this reason, in order to evaluate the Chapter 7 Trustee's Final Account, we turn first to the words of the statute themselves.

The term *"compensation"* as used in § 330 makes no reference to the inclusion of overhead expenses or any other expenses. The phrase "actual, necessary *expenses"* used in § 330 does not contain any exception for overhead as an item of expenses. The provisions for reimbursement of expenses appear clear and the two categories—compensation and reimbursable expenses—are separately stated and established. If the trustee's compensation is reasonable, it is to be paid. Likewise if an item is an expense and is *actual* and *necessary*, the trustee is entitled to his reimbursement.

The word **"actual"** is defined in *Black's Law Dictionary* in pertinent part as follows:

Real; substantial; existing presently in [f]act; having a valid objective existence as opposed to that which is merely theoretical or possible. Opposed to potential, possible, virtual, theoretical, hypothetical, or nominal....

*Black's Law Dictionary,* 5th ed. at page 33.

The items charged by the trustee are clearly real, substantial and presently existing in fact. He gets billed for them. They are *not* potential, merely possible, theo-

retical, or hypothetical. The Trustee has to pay for them.

The word **"necessary"** is defined in *Black's Law Dictionary* in pertinent part as follows:

This word must be considered in the connection in which it is used, as it is a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, suitable, proper, or conducive to the end sought. It is an adjective expressing degrees, and may express mere convenience or that which is indispensable or an absolute physical necessity. It may mean something which in the accomplishment of a given object cannot be dispensed with, or it may mean something reasonably useful and proper, and of greater or lesser benefit or convenience, and its force and meaning must be determined with relation to the particular object sought.

*Black's Law Dictionary,* 5th ed. at page 928 (citation omitted).

■ For purposes of the within case, the court determines that **"necessary"** means that which is useful, appropriate, suitable, and proper. The proper interpretation in the present context is **"necessary and proper,"** which phrase is defined by *Black's* as follows: "Words 'necessary and proper' mean appropriate and adapted to carrying into effect given object." *Black's Law Dictionary,* 5th ed. at page 928 (citation omitted). The items claimed by the trustee are appropriate and adapted to carrying in to effect a given object, to wit: administration of the estate.

The word **"Expense"** is defined in *Black's Law Dictionary* as: "That which is expended, laid out or consumed. An outlay; charge; cost; price...." *Black's Law Dictionary,* 5th ed. at page 518. The items claimed by the Trustee are "actual, necessary expenses," which may be reimbursed pursuant to § 330 of the Code.

■ I am sure that it would come as a shock to the business community to learn that overhead expenses are considered in some circles to be neither actual nor neces-

sary. If there be any doubt that office rent is an actual and necessary expense, stop paying it and see what the effect is upon the trustee's ability to administer debtor estates. Such expenses, being actual and necessary, have to be passed on to the ultimate user or consumer in one way or another. Acknowledging the practical necessity for so doing, overhead expenses have universally come to be passed on, in the real world, by some reasonable formula.

Lawyers have the undoubted ability to pass on their overhead to their clients. They do this by simply increasing the hourly rate. Within any given legal community, there is usually a de facto understanding regarding which items are provided for as overhead factored into the hourly rate, and which items are billed directly to individual clients. *See In re Thacker,* 48 B.R. 161, 164 (Bankr.N.D.Ill.1985). There is no statutory cap on attorney fees in bankruptcy, but attorney fee applications are traditionally scrutinized to assure that attorneys do not "double bill" by charging a high hourly rate and then billing separately for expenses normally built into the hourly rate.

Accountants on the other hand, frequently, break out and charge clients individually for "overhead" items, and bill at a lower hourly rate. Building contractors simply add a fixed percentage of the cost of the job as overhead. Understanding the fee structure of the industry, and of the individual practitioner, is critical to determining how the overhead expenses are included and recovered.

A Chapter 7 trustee, being subject to a compensation cap, does not have the luxury of recovering his overhead expenses by increased compensation. He must separately bill all expenses, including overhead. In addition, such a breakdown contributes to the clarity and ease of determining the actual payment for his services as opposed to his recovery of expenses.

In his brief, the U.S. Trustee, by case citation, defines "overhead expense" as "those costs incurred on a day to day basis and assessed to all the firm's clients." Objection to Trustee's Application for Reimbursement of Expenses (Final Account) (hereinafter referred to as the U.S. Trustee's brief) at p. 4, citing *In re Orthopaedic Technology,* 97 B.R. 596 at 602 (Bankr.D. Colo.1989). The U.S. Trustee then contends that such expenses must be subsumed by the § 330 compensation of Chapter 7 Trustee. The U.S. Trustee bemoans the effect of the ruling he contends for, but argues that Congress created the problem and that only Congress can give relief.

To the contrary, if effect is given to the clear statutory language, there is no problem. Reasonable compensation is payable. Expenses are reimbursable. If Congress intended otherwise, it would have said so. We believe that this simple answer is appropriate to resolve the issue now before this Court.

*Case Law*

The U.S. Trustee, however, cites a long list of cases which he asserts demand a different result. In order to avoid being misunderstood, we therefore wish to explain why we do not find these cases persuasive.

The U.S. Trustee's argument has two major bases:

(1) a line of cases, all concerning attorney compensation, which excludes "overhead" items from separate compensation when overhead is built into the professional's hourly rate, and

(2) three recent cases, *Orthopaedic Technology, In re Williams,* 102 B.R. 197 (Bankr.N.D.Cal.1989) and *In re A–1 Hydro–Mechanics Corp.,* 106 B.R. 198 (Bankr. Haw.1989) which extend the attorney compensation analysis to Chapter 7 Trustee compensation.

Little need be said about the attorney compensation cases. The citations are set forth in a footnote.[1] As previously estab-

---

1. The U.S. Trustee cited the following attorney compensation cases:

*In re Pothoven,* 84 B.R. 579, 586 (Bankr.S.D. Iowa 1988); *In re Wabash Valley Power Ass'n, Inc.,* 69 B.R. 471, 479 (Bankr.S.D.Ind.1987); *In*

lished, trustees do not have the flexibility accorded attorneys in increasing their "compensation" to cover overhead expenses. All of the cases noted below evince concern that attorneys, whose hourly rates are structured to cover their firms' overhead expenses, not double-bill a bankruptcy estate by making a second, separate charge for items customarily included in the hourly rate calculation. Most of the cases include a list of items usually deemed to be overhead, and there is a fair amount of disagreement among the cases as to what items ought to be so included. Since none of the cases concerns Chapter 7 trustee compensation, none is a controlling precedent for this matter. In addition, five of the six cases are bankruptcy court cases and would not be binding on this Court in any event. The sixth case is the seminal Ninth Circuit case allowing fees to attorneys for the time spent preparing fee applications; the U.S. Trustee's citation from that case refers to a footnote, which arguably would be dicta even if the case concerned trustee compensation. *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659 n. 5 (9th Cir.1985).

The U.S. Trustee's legal argument then rests on *Orthopaedic Technology* and its progeny, *Williams* and *A–1 Hydro Mechanics.* These cases are all bankruptcy court cases, and therefore none is a controlling precedent.

The great bulk of the *Orthopaedic Technology* decision is devoted to a different issue, the controversial question of whether combined trustee and paralegal compensation is subject to the § 326 cap on total trustee compensation. Nevertheless, the case also does state, that "[o]verhead expenses, which ordinarily may not be reimbursed or compensated under section 330(a), encompass secretarial and clerical expenses, and ordinary postage costs." *Orthopaedic Technology* at 602. (*See,* however, Puerto Rico and Hawaii cases to be contrary: *In re Perez Hernandez*, 73 B.R. 329, 331 & 332 (Bankr.P.R.1987) and *In re Central Pacific Boiler & Piping,*

Ltd., (*First Hawaiian Bank v. Anderson*) 88 B.R. 277, 278 (Bankr.Haw.1988).)

The Trustee Fee Application at issue in *Orthopaedic Technology* was substantial—over $3000—and also presented a litany of doubtful charges and inadequate documentation. The case appears to have reached a just result on the facts, but there are substantial reasons for believing that the Court's conclusion regarding trustee overhead is wrong.

The Court's analysis is based on the definition of overhead the U.S. Trustee cited to us in his brief: "Overhead expenses, those costs incurred on a day-to-day basis and assessed to all of the firm's clients." *Id.*

The *Orthopaedic Technology* court apparently is willing to have professionals recover their overhead. The full sentence, of which the U.S. Trustee quoted a part, reads: "Overhead expenses, those costs incurred on a day to day basis and assessed to all the firm's clients, *are properly included in a professional's hourly rates."* *Id.* (emphasis added). I am not aware, however, that a professional is *required* to so structure his fees. Attorneys and accountants of course do work for clients and by custom many pass on overhead by billing it into the hourly rate. Whether or not the bankruptcy estates administered by a trustee can be considered his clients, he clearly does not bill the estates on an hourly basis. He is simply to be compensated for the value of his services, subject to the cap of § 326 of the code. In fixing his compensation, the time spent is but one of several factors to be considered.

It is not difficult to see how the *Orthopaedic Technology* Court may have fallen into error. The bulk of the case is devoted to analysis of the bill of a paralegal who *did* bill the estate on an hourly rate and who *probably* billed the estate for services properly done by a secretary. The paralegal's bill alone was more than twice the entire fee application in issue here. The trustee's commission was even higher.

re Nucorp Energy, Inc., 764 F.2d 655, 659 n. 5 (9th Cir.1985); *In re Pacific Express,* 56 B.R. 859, 865 (Bankr.E.D.Cal.1985); *In re Tom Carter*

Ents., 55 B.R. 548, 552 (Bankr.C.D.Cal.1985); *In re Thacker,* 48 B.R. 161, 164 (Bankr.N.D.Ill. 1985).

Nevertheless, as rules of law, both the definition of trustee overhead and the holding that such overhead ought to be "included in [the] professional's hourly rate" are wrong because they grossly mis-state the basis of a bankruptcy trustee's compensation.

*Policy considerations*

The United States Department of Justice, under whose jurisdiction the U.S. Trustee system operates, has acknowledged the need to increase the compensation of Chapter 7 Trustees. *See* Trustee's Exhibit 3.[2] Case law and commentators often cite a concern for the frequent possibility that Chapter 7 trustees will be inappropriately under-compensated. *See, e.g., Central Pacific Boiler & Piping, Ltd.* and *Perez Hernandez*, the latter quoting from *Norton Bankruptcy Law & Practice*. Further, neither the U.S. Trustee nor the Court has identified any indicia of abuse by the Chapter 7 Trustee in the within case. In these circumstances, and since there is no statutory or legislative history which supports the U.S. Trustee's point, it is puzzling why his response is to attempt to deny Chapter 7 trustees their statutory right to recover all of their actual and necessary expenses where, as here, such expenses are being recovered only once. One thing is clear— until the Chapter 7 Trustee recovers his expenses in full, including overhead, his compensation is zero.

*Inadequate Documentation*

█ As part of his overhead argument, the U.S. Trustee contends that only *specifically identified* expenses can be reim-

bursed. The trustee in this case has adopted a formula for calculating the percentage of his general office overhead expenses allocated to each case he administers, with adjustments for disproportionately large cases. *See* Trustee's Exhibits 1 & 2. The formula used by the Chapter 7 Trustee in this case is a detailed and rational means of attempting to allocate overhead to the matters being handled by him at any given time. It is certainly as logical as the increased hourly rate approach. While any formula is to some very limited extent imprecise, such is the price of practicality and ease of application. The cost of achieving absolute precision far exceeds any potential benefit. The formula is not properly characterized as an estimate—it is rather a factual determination based upon past experience. Bankruptcy Rule 2016 requires no more when it requires "a detailed statement of ... expenses incurred, and ... the amounts requested."

As a part of the audit function, actual total expenses by category can be ascertained and compared with the reimbursements claimed and received. The formula can be fine-tuned to avoid future over-payment if it is found to be inaccurate. Abusive practices, such as rental of luxurious quarters or excessive equipment purchases, can be identified easily, being separately stated.

Presumably another evil to be avoided is the possibility that even one penny may be taken from one estate and expended for the benefit of another. The entire U.S. Trustee program, including compensation and

---

**2.** Trustee's Exhibit No. 3 is a copy of a letter dated March 7, 1990 from an Acting Assistant Attorney to the Vice President in support of a proposed Bankruptcy Administration Improvement Act of 1990. The act would provide enhanced resources for bankruptcy crime enforcement activities by private Chapter 7 trustees. The letter contains the following references to the current system of trustee compensation:

> ... case trustees now work on a very limited commission basis ... Unlike other fiduciaries, or for that matter collection agents, bankruptcy trustees cannot refuse employment in these 'no asset' cases. Collection agents can demand a percentage of recoveries that may be as high as 50 percent, but trustees may only

> receive $45 in a no asset case, and a maximum of $330 on collections and disbursements of $5,000.... On many other occasions, the trustee may become embroiled in time-consuming litigation for which only the attorney for the trustee is compensated, a particularly frustrating result for trustees who are not attorneys but are nonetheless extremely competent trustees.... This new legislation ... will also enable trustees to continue in office without requiring the financial sacrifice many are increasingly unwilling to make. The concept of private trustees is one we strongly support and one that should be preserved, but it will become impossible to retain competent individuals without adequate rewards.

overhead expenses, is funded by a *formula* imposed, which reflects only a slight relationship between the cases from which moneys are extracted and the benefits conferred. The funding for the U.S. Trustee system is provided by 28 U.S.C. § 589a(b). By way of illustration the U.S. Trustee system is funded by, among other fees, ¼ of the Chapter 7 and 13 filing fees, ½ to ⅗ of Chapter 11 filing fees, ½ of the Chapter 12 filing fees, ¾ of certain conversion fees and *all of the Chapter 11 quarterly fees.* This scheme indicates that, like the business world, Congress finds formulaic allocations a useful budgeting tool in some circumstances.

Similarly, Chapter 13 Trustees recover their compensation and expenses by formula. Chapter 13 trustees receive a fund for fees and expenses based upon sums disbursed pursuant to 28 U.S.C. § 586(e)(1)(A) and (B). It is this Court's understanding that from such funds the Chapter 13 Trustees receive compensation subject to an annual cap, that such compensation is personal to the trustee as compensation for his services, and that the trustee likewise receives reimbursement for actual and necessary expenses, including all overhead expenses such as, *inter alia*, office and equipment rental, clerical expense, postage and supplies.

*Summary*

Whether a professional gets to recover his overhead should not turn on whether he includes that recovery in his hourly rate, or whether he candidly calls it what it is, to wit: overhead expense. The evil to be guarded against is not the labeling of the payment. The evil is double collection. Lawyers, having freedom to fix their hourly rates, can include their overhead in that rate. A Chapter 7 trustee, on the other hand, is faced with a fixed maximum *compensation.* He must therefore call his overhead expenses what they are—and recover them as such—if he is to recover them at all. No double recovery is present. The sums received by the trustee for his services and his expenses are clearly and separately identified, thus simplifying the task of determining whether the compensation is excessive, or whether the expenses claimed are inflated.

In larger cases, where the magnitude of funds passing through an estate would over-compensate a trustee whose expenses were fully recouped under § 330, the statutory scheme Congress has given allows us to reduce the compensation to avoid abuse. Section 326 is simply a cap and a lesser compensation can properly be awarded. Alternatively, a Court might authorize the maximum percentage compensation in a large case, and require the trustee to subsume certain overhead costs because of the magnitude of sums otherwise received. Either approach would be authorized by the Code. What is not authorized is the non-statutory and internally inconsistent definition and treatment of overhead contended for by the U.S. Trustee, which robs the trustee of ability to recover his actual and necessary expenses.

The foregoing sufficiently sets forth the basis for the Court's decision and no further findings of fact or conclusions of law are required. For the reasons stated, the Trustee's Application for Reimbursement of Expenses (Final Account) is granted and the objections of the U.S. Trustee are overruled.

Counsel for Chapter 7 trustee is directed to prepare, serve and lodge with the Court a proposed order in accordance with the foregoing. If no written objections are filed with the Court on or before the later of eight days after service on opposing counsel or eight days after lodgment with the Court, the Order may be signed, filed, and entered herein.