32 F.3d 1370
 63 USLW 2163, 31 Collier Bankr.Cas.2d 1136,
Bankr. L. Rep. P 76,029
 In re UNITED STATES TRUSTEE.
Anthony G. SOUSA, U.S. Trustee, Appellee,
v.
Paul Anthony MIGUEL, Patricia Ann Miguel, dba Miguel Dairy
Systems, et al., and Michael D. McGranahan,
Chapter 7 Trustee, Appellant.
 No. 92-16496.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 14, 1994.
Decided Aug. 5, 1994.
 
 Malcolm D. Gross, Altman, Collins & Gross, Modesto, CA, for appellant.
 Martha L. Davis, Gen. Counsel for the U.S. Trustee, Donna S. Tamanaha, Washington, DC, for appellee.
 Appeal from the United States District Court for the Eastern District of California.
 Before GOODWIN, WIGGINS, and BRUNETTI, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 In this case, we must decide whether a trustee in bankruptcy can receive reimbursement under 11 U.S.C. Sec. 330(a)(2) for normal overhead expenses. We have jurisdiction under 28 U.S.C. Sec. 158(d). Because we conclude that Sec. 330(a)(2) does not contemplate reimbursement for normal overhead expenses, we affirm the district court.
 
 I. FACTS AND PRIOR PROCEEDINGS
 
 2
 Paul Anthony and Patricia Ann Miguel filed a voluntary joint petition for relief under Chapter 7 of the Bankruptcy Code. The bankruptcy court appointed Michael McGranahan (the "Trustee") as the interim trustee to administer the Miguel's case. The trustee identified this case as an "asset" case and liquidated available assets for the intended benefit of creditors. Upon liquidation, the Trustee filed his Final Account for Court Approval.
 
 
 3
 This Final Account showed that after payment of expenses of sale, $920.00 remained as funds available for distribution. The Trustee requested payment of his statutory commission of $159.00, $432.00 for reimbursement of expenses, and $540.00 as compensation for the Trustee's attorney.
 
 
 4
 The Trustee listed his expenses as follows:
 
 
 5
 Postage and meter rental $22.75
Pacific Telephone 12.80
Mileage 9.60
Stationery and supplies 33.25
Office and equipment 105.00
Clerical and steno services 230.00
Copies 18.60
 -------
 Total $432.00
 
 
 6
 The Trustee testified that he computed these expenses at the conclusion of the case upon preparing his Final Account and did not document other expenses contemporaneously. In addition to this listing, the Trustee presented a worksheet from another case to the bankruptcy court to further clarify his method of recording and record keeping.
 
 
 7
 The trustee testified to his computation of expenses for each listed item as follows:
 
 
 8
 1. Postage and meter rental: Postage is arrived at by counting the correspondence and mailings in the case. Meter rental is arrived at by taking the Trustee's monthly cost, dividing it by the average number of asset cases, and multiplying that figure by the number of months the specific case was open.
 
 
 9
 2. Pacific Telephone: The Trustee arrived at a total of eight long distance phone calls--the file indicated four calls and the Trustee estimated four additional calls. Based on "historical data" and his last six months of phone bills, the Trustee divided the amount of the bills by the number of calls made and arrived at an amount of $1.60 per phone call. The trustee then multiplied $1.60 per phone call by eight calls.
 
 
 10
 3. Mileage: The Trustee computed the mileage per month on his business car and divided the amount of miles by the number of asset cases to arrive at the number of miles per month to be allocated to each asset case. The Trustee then multiplied that number by $.25 per mile and by the number of months the specific case was open.
 
 
 11
 4. Stationery and supplies: The Trustee determined the actual cost of his stationery and multiplied that number by the number of envelopes and letterhead used.
 
 
 12
 5. Office and equipment rental: The Trustee added up the monthly cost of his office rent ($700.00), insurance costs ($50.00), utilities ($150.00), cleaning service ($100.00), and alarm system ($50.00), and divided that number by the number of pending asset cases to arrive at a dollar amount per asset case. Then the Trustee multiplied the amount per asset case by the number of months the specific case was open.
 
 
 13
 6. Clerical and stenographic services: The Trustee counted the letters typed in the specific case and charged $10.00 per letter. The Trustee arrived at the $10.00 charge by calculating that the secretary earns about $10.00 an hour and by estimating that it takes about an hour to complete a letter, considering editing, copies and mailing. The Trustee added seven hours of clerical time allegedly involved in putting together the final account and the order listing claims, mailing the dividend checks, and doing the order settling. In this case, the Trustee determined that there were 23 hours of clerical time at $10.00 per hour. The Trustee testified that these were not actual hours, but average time spent for various tasks based on historical information.
 
 
 14
 7. Copies: The Trustee counted the documents and multiplied that number by $.20 per document.
 
 
 15
 See Appellant's Brief at 3-5.
 
 
 16
 The Trustee generally uses these calculations in his asset cases. In addition, the Trustee will discount the numbers in low asset cases "so that the assignment of these expenses is not out of proportion to the amount of assets in a particular case." See Appellant's Brief at 5.
 
 
 17
 On October 22, 1990, the United States Trustee filed an objection to the Chapter 7 Trustee's Final Account. On November 1, 1990, after hearing testimony from the Trustee and argument from counsel, the bankruptcy court overruled all objections of the United States Trustee and granted the Trustee's application in full. See In re Miguel, 123 B.R. 634 (Bankr.E.D.Cal.1991). Allowing for reimbursement of overhead expenses, the bankruptcy court held that it had the discretion to treat non-attorney trustees differently from attorney trustees, who have the flexibility to increase their "compensation" to cover overhead expenses. Id. at 638. Since trustees are "faced with a fixed maximum compensation[,] [they] must call [their] overhead expenses what they are--and recover them as such--if [they] are to recover them at all. No double recovery is present." Id. at 640. Determining that overhead expenses were actual and necessary, the court stated that "[i]f there be any doubt that office rent is an actual and necessary expense, stop paying it and see what the effect is upon the trustee's ability to administer debtor estates." Id. at 637.
 
 
 18
 The United States Trustee appealed the bankruptcy court's decision. On July 13, 1992, the district court heard the appeal, and entered an order on July 23, 1992, reversing the decision of the bankruptcy court and remanding the case for further findings as to which of the Trustee's itemized expenses constituted overhead under In re Rauch, 110 B.R. 467 (Bankr.E.D.Cal.1990). This appeal by the Chapter 7 Trustee followed.
 
 II. DISCUSSION
 
 19
 "We are in as good a position to review the bankruptcy court's decision as is the district court. Thus, when we review a district court decision with respect to a final order of a bankruptcy court, we in essence are reviewing the final order of the bankruptcy court." Sambo's Restaurants, Inc. v. Wheeler (In re Sambo's Restaurant), 754 F.2d 811, 814 (9th Cir.1985) (citations omitted). "We apply the same standard of review to the bankruptcy court findings as does the district court: findings of fact are reviewed under the clearly erroneous standard, and conclusions of law, de novo." Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.), 912 F.2d 1162, 1166 (9th Cir.1990) (citations omitted).
 
 
 20
 Under Sec. 330(a)(2), "the court may award to a trustee ... reimbursement for actual, necessary expenses." 11 U.S.C. Sec. 330(a)(2) (1988). In this case, the Trustee contends that a bankruptcy court has discretion to award Chapter 7 trustees, whose statutory fees are not sufficient to subsume their expenses, reimbursement for overhead expenses under Sec. 330(a)(2). In opposition, the United States Trustee argues that Sec. 330(a)(2) does not include overhead expenses as compensable items. We agree with the United States Trustee and hold that the bankruptcy court erroneously construed Sec. 330(a)(2) when it granted the Chapter 7 trustee reimbursement for normal overhead costs.
 
 
 21
 The Trustee attempts to distinguish between attorneys who serve as trustees and non-attorney trustees. As a non-attorney trustee, the Trustee argues that, unlike trustees who are attorneys, he cannot merely increase his hourly rate to cover increases in overhead expenses. The bankruptcy court based its holding on this reasoning, finding that it had the discretion to treat non-attorney trustees different from attorney trustees.
 
 
 22
 We are not persuaded by this argument. A trustee who is an attorney cannot increase his or her hourly rate when performing trustees' duties. Courts have specifically denied compensation at an attorney's rate for services performed by an attorney trustee that a non-attorney trustee could complete without legal assistance. In In re McKenna, 93 B.R. 238 (Bankr.E.D.Cal.1988), the court refused to award attorney's fees to an attorney trustee for services ordinarily performed by a trustee. The court held that a "trustee may not be paid an attorney's fee for any task that ordinarily would be performed by a competent trustee without assistance from counsel." Id. at 240. Discussing trustees who serve as their own counsel under 11 U.S.C. Sec. 328(b)[1], the court recognized Congressional intent that "the court [ ] differentiate between the trustee's services as trustee, and his services as trustee's counsel, and to fix compensation accordingly." Id. (citing H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 328-29 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 39 (1978), U.S.Code Cong. & Admin.News, 1978, pp. 5787, 5825, 6285).
 
 
 23
 The Fourth Circuit limited the fees of an attorney in a similar case. In United States Trustee v. Porter, Wright, Morris & Arthur (In re J.W. Knapp), 930 F.2d 386 (4th Cir.1991), the Fourth Circuit refused to compensate a trustee's attorney who performed duties statutorily required of the trustee. The court stated that "courts may not compensate an attorney for services statutorily required by the trustee. Only when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties and only to the extent of matters requiring legal expertise." Id. at 388. Thus, attorney trustees may not charge attorney's fees when performing trustee duties and include overhead costs in their hourly rates. These cases show that the bankruptcy court improperly concluded that it had the discretion to treat attorney and non-attorney trustees differently when awarding reimbursement for "actual, necessary expenses."
 
 
 24
 The detailed statutory scheme created by Congress for the compensation of trustees also supports our decision that the bankruptcy court erred when it distinguished compensation of attorney and non-attorney trustees in terms of reimbursement for normal overhead expenses. Congress specifically limited trustees' compensation in certain respects, making trustees' compensation different from that of attorneys. However, no provision in the bankruptcy code distinguishes attorney trustees, who cannot charge attorney's fees for trustees' duties, from non-attorney trustees for matters of reimbursement of "actual, necessary expenses."
 
 
 25
 The court may award trustees, like other professionals, "reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person or attorney ... based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services other than in a case under this title." 11 U.S.C. Sec. 330(a)(1) (1988). Congress further defined compensation for trustees by limiting the amount a court may award a trustee for his or her services under Sec. 330(a)(1) to a percentage based upon the amount of moneys disbursed or turned over in a specific case. 11 U.S.C. Sec. 326(a) (1988). In addition to compensation for services, under Sec. 330(b), trustees in a Chapter 7 case receive $45. 11 U.S.C. Sec. 330(b) (1988). These provisions clearly set forth a statutory scheme in "asset" cases, whereby Chapter 7 trustees will be compensated for their services according to Sec. 330(a)(1) and Sec. 326(a) and will receive an additional $45 pursuant to Sec. 330(b). In "no-asset" cases, Chapter 7 trustees will merely receive the $45. Finally, under Sec. 330(a)(2), Congress provided the bankruptcy court with the discretion to award trustees "reimbursement for actual, necessary expenses." 11 U.S.C. Sec. 330(a)(2) (1988).
 
 
 26
 Case law also supports our conclusion that Sec. 330(a)(2) does not contemplate reimbursement for normal overhead expenses. In In re Rauch, 110 B.R. 467, 476-77 (Bankr.E.D.Cal.1990), the bankruptcy court held that the Chapter 11 trustee could not receive reimbursement for clerical duties, including letter writing, phone answering, leaving messages, balancing the bank statement, and writing checks, because those duties constituted overhead and were nonreimbursable under Sec. 330(a)(2). The court allowed reimbursement for "direct, out-of-pocket expenses, including postage, copy costs, long distance calls, fax charges, bond premiums, and notary fees." Id. at 476. We find this analysis correct.
 
 
 27
 The Rauch Court relied on In re A-1 Hydro Mechanics Corp., 106 B.R. 198, 199 (Bankr.D.Haw.1989), in which the court held that "[a]lthough the [Chapter 7] Trustee is entitled to engage a paraprofessional to assist him and have the paraprofessional paid out of the estate, secretarial, stenographic, clerical and routine messenger services are overhead expenses and are not compensable under Section 330(a)(1) or reimbursable under Section 330(a)(2)." Both Rauch and A-1 cite to In re Orthopaedic Technology, Inc., 97 B.R. 596 (Bankr.D.Colo.1989), for the proposition that "[a]ctivities such as reviewing mail, making deposits and disbursements and reconciling bank statements appear to be clerical in nature" and are overhead expenses to be assumed and borne by the Trustee.
 
 
 28
 Adhering to the principle that overhead is not reimbursable, the court in In re Williams, 102 B.R. 197, 198 (Bankr.N.D.Cal.1989), held that a Chapter 7 trustee could not recover expenses for the "normal expenses of running his or her office." The court disallowed reimbursement for "normal stationery, clerical, and telephone charges ... [and allowed recovery only] for extraordinary expenses to the extent they are associated with the special needs of an individual case and are fully documented." Id. at 198-99 (emphasis in original). To explain its holding, the court stated that
 
 
 29
 For instance, postage to give 100 creditors notice of a proposed sale is reimbursable, but an allocation of general postage costs is not; the costs of a special clerk hired to collect an estate's accounts receivable are reimbursable, but a general allocation of the salary of the trustee's employees is not; the charge for a specific telephone conference call is reimbursable, but an allocation of the basic monthly telephone charge is not; preparation of a special flyer to advertise as sale is reimbursable, but the cost of the trustee's letterhead is not.
 
 Id.[2]
 
 30
 Other courts' decisions also support the principle that a trustee's normal overhead is nonreimbursable under Sec. 330(a)(2). See, e.g., In re Orient River Inv., Ltd., 133 B.R. 729, 733 (Bankr.E.D.Pa.1991) (for all professions, overhead is nonreimbursable, since court would "not allow trustees to receive compensation for expenses which [it] do[es] not allow to other professionals"); In re Hobbs, 108 B.R. 93, 94 (Bankr.D.Md.1989) (paralegal compensation should be charged to the estate and "not as part of the non-professional, clerical overhead costs for the trustee that remains [sic] the trustee's responsibility"); In re Peoples Sav. & Inv., Inc., 103 B.R. 264, 275 (Bankr.E.D.Okl.1989) ("Overhead items are presumed non-reimbursable."); In re Pothoven, 84 B.R. 579, 586 (Bankr.S.D.Iowa 1988) ("Charges which are part of the cost of operating overhead are not properly chargeable to the bankruptcy estate. Overhead expenses typically include rent, insurance, taxes, utilities, secretarial and clerical pay, library, computer costs, office supplies, local telephone charges, meals, and local travel."). Thus, for both attorney and non-attorney trustees and other professionals, courts have held that Sec. 330(a)(2) does not allow for reimbursement of normal overhead expenses.
 
 
 31
 Several courts, however, have held that to the extent trustees can document expenses as benefitting a specific estate, it will allow reimbursement, even if those expenses include clerical work. In In re Stanley, 120 B.R. 409, 415 (Bankr.E.D.Tex.1990), the court found that other courts' reluctance "to award fees for clerical, secretarial and stenographic work [stemmed] more out of a failure of the requesting Chapter 7 Trustee to provide accurate documentation of the actual and necessary nature of the work rather than a reluctance to award these expenses based on a literal interpretation of the Bankruptcy Code." Thus, the court would allow reimbursement if trustees properly documented expenses; under the Stanley facts, however, the court found that the trustee's documentation was improper and thus did not award reimbursement.
 
 
 32
 The court in Stanley relied on First Hawaiian Bank v. Anderson (In re Central Pacific Boiler & Piping, Ltd.), 88 B.R. 277 (Bankr.D.Haw.1988), and In re Perez Hernandez, 73 B.R. 329 (Bankr.D.Puerto Rico 1987). In Perez Hernandez, the court denied the trustee's application for reimbursement because he failed to provide adequate documentation and estimated, rather than itemized, certain expenses. In doing so, however, the court noted that expenses under Sec. 330(a)(2) included "miscellaneous expenses such as stamps, stationery, photocopies, telephone calls, and incidental secretarial expenses." Id. at 332-33. In Central Pacific, the court found that an amount charged for storage space that included overhead was not acceptable. However, in light of the fact that "a Chapter 7 trustee spends considerable time and effort in performing his duties without compensation, especially where the case involves a no-asset estate," the court stated it would reimburse the trustee for stamps, stationery, photocopies, telephones and incidental secretarial services.
 
 
 33
 We find Stanley, Perez Hernandez, and Central Pacific unpersuasive, since secretarial services are included in normal overhead costs. In all cases, the courts denied the trustees' application for reimbursement and merely stated what expenses for which the court might have reimbursed the trustees if they had provided adequate documentation. Thus, the focus in those cases was on the appropriate documentation, and none of the courts sufficiently accounted for the majority of decisions holding that overhead is nonreimbursable. Furthermore, the Hawaii bankruptcy court's ruling in Central Pacific is prior to its decision in A-1, in which the court specifically held that a Chapter 7 trustee was not entitled to reimbursement or compensation for overhead expenses, such as secretarial, stenographic, clerical, and routine messenger services. The court in In re Lanier Spa, Inc., 99 B.R. 490, 491 (Bankr.N.D.Ga.1989), criticized the decision in Perez Hernandez, stating that the court in that case indicated but did not hold that secretarial services were reimbursable and that many courts have held that they are overhead and not compensable as professional services or expenses. Therefore, these cases do not persuade us to reach a different conclusion.
 
 
 34
 The principle that trustees must document expenses in relation to specific cases reinforces our decision.[3] In this case, the Trustee calculated expenses for meter rental, Pacific Telephone, mileage, office equipment and rental, and clerical and stenographic services based on estimates and average costs. This is impermissible according to Williams, in which the court found that "an expense is not 'actual,' and therefore not reimbursable under section 330(a)(2), to the extent that it is based on any sort of guesswork, formula, or pro rata allocation. Concrete documentation, in the form of receipts and invoices, is therefore necessary to support any application for reimbursement." Williams, 102 B.R. at 199. Even the court in Stanley, which allowed for reimbursement of overhead costs, held that trustees must document work as to "the individual performing it, the time involved in performing the service, and the benefit to the individual estate," and that it was "willing to award reimbursement for expenses only to the extent that said expenses are directly allocable to the administration of the estate." Stanley, 120 B.R. at 415; see also Perez Hernandez, 73 B.R. at 331-32 ("The use of estimates is not the proper procedure to claim reimbursement of expenses.")
 
 
 35
 In this case, the Trustee estimated costs for the expenses requested, and the estimates bore no relation to the Miguels' estate and are not properly reimbursable.
 
 
 36
 The Trustee argues based on policy and Congressional intent that overhead expenses are reimbursable under Sec. 330(a)(2). According to the Trustee, since the statutory fee for trustees often does not cover expenses, trustees' motivation to search for additional assets is chilled by nonreimbursement for overhead. See Appellant's Brief at 14.
 
 
 37
 We are not persuaded by the Trustee's policy arguments. To the extent trustees' compensation is capped,[4] that cap does not necessarily affect trustees' overhead expenses. The Trustee argues that if courts do not reimburse overhead expenses, trustees will be less motivated to find assets to bring into the estate. However, overhead expenses, such as rent for office space, meter rental, insurance costs, utilities, cleaning services, and alarm systems, will not increase or decrease based upon the amount of assets a trustee recovers in a particular case. The incentive scheme created by Sec. 326(a) refutes the Trustee's contention that he should receive reimbursement for overhead expenses in addition to a percentage of the assets recovered--his reimbursable expenses must specifically relate to rounding up the assets of the estate, not to general "stay in business" costs. The Trustee also fails to account for the fact that compensation for overhead expenses, allocated among asset cases, burdens those estates with unassociated office costs.[5]
 
 
 38
 As Collier states in his discussion on reimbursement of trustees and examiners for expenses:
 
 
 39
 [T]he scale of expenses allowable to trustees may range from the rent indispensable to secure preservation of the debtor's assets to the cost of prizes, barbecue, music and other publicity designed to attract a crowd and induce it to buy what the trustee is anxious to sell. It will cover expenditure incident to an authorized conducting of a business, such as rent, insurance, salaries, wages, costs of merchandise and production, royalties and taxes. In addition, expenses of investigation, litigation, arbitration, settlement and traveling come within the coverage of section 330.
 
 
 40
 2 Collier on Bankruptcy (15th Ed.) Sec. 330.06. This description of expenses illustrates that trustees are entitled to reimbursement for expenses incurred in the administration of a specific estate, not what they generally spend to run their office.
 
 III. CONCLUSION
 
 41
 We find that based on the bankruptcy code, case law, and policy concerns, trustees are not entitled to reimbursement for normal overhead expenses under Sec. 330(a)(2). Accordingly, because the bankruptcy court improperly allowed the Trustee reimbursement for overhead expenses, we affirm the district court's decision to reverse and remand to the bankruptcy court to determine which of the Trustee's expenses for which he requested reimbursement constitute nonreimbursable overhead.
 
 
 42
 AFFIRMED.
 
 
 
 [1]
 Section 328(b) provides that
 [i]f the court has authorized a trustee to serve as an attorney or accountant for the estate under section 327(d) of this title, the court may allow compensation for the trustee's services as such attorney or accountant only to the extent that the trustee performed services as attorney or accountant for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant for the estate.
 11 U.S.C. Sec. 328(b) (1988).
 
 
 [2]
 We recognize that the court in Williams stated that
 [t]he problem with most of the rulings summarily dismissing the trustee's right to any reimbursement for clerical and other expenses is that they are made in cases where the trustee is also an attorney. Such holdings seem unduly draconian when applied to a trustee who is not an attorney and therefore cannot merely increase his or her hourly rate to cover increases in overhead.
 Williams, 102 B.R. at 198. Despite this statement, the court held that "[o]n the other hand, the cases are clearly correct in ruling that normal overhead items were not the sort of expenses contemplated by Congress as reimbursable under section 330(a)(2)." Id. We find that the Williams court's holding would apply to both attorney and non-attorney trustees. Because attorney trustees cannot merely increase their hourly rates to provide for increased overhead expenses when they are performing trustees' duties, see discussion at pages 1372 - 73; supra, the hesitation expressed by the court in Williams does not detract from our opinion in this case.
 
 
 [3]
 Case law stating that "actual" and "necessary" expenses are reimbursable only if trustees specifically relate them to a particular estate merely supports our holding. While we find it unlikely that a trustee could document normal overhead expenses in relation to a particular estate, even if a trustee did, we would find them nonreimbursable under Sec. 330(a)(2). A bankruptcy court within its discretion could reimburse a trustee for an extraordinary office expense properly documented to a specific estate
 
 
 [4]
 Section 326(a) limits a trustee's compensation to a defined percentage dependent upon the amount of moneys disbursed or turned over in the case by the trustee. 11 U.S.C. Sec. 326(a) (1988)
 
 
 [5]
 We find nothing in the bankruptcy code suggesting that Congress contemplated an institutionalized process with full-time trustees in Chapter 7 cases. To the extent that Chapter 13 may differ in this respect, see 28 U.S.C. Sec. 586, the compensation of trustees in Chapter 13 cases is inapposite to our decision in this Chapter 7 case